IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF CONNECTICUT, STATE OF DELAWARE, STATE OF FLORIDA, STATE OF GEORGIA, STATE OF HAWAII, STATE OF ILLINOIS, STATE OF INDIANA, STATE OF IOWA, STATE OF LOUISIANA, STATE OF MARYLAND, COMMONWEALTH OF MASSACHUSETTS, STATE OF MICHIGAN, STATE OF MINNESOTA, STATE OF MONTANA, STATE OF NEVADA, STATE OF NEW HAMPSHIRE, STATE OF NEW JERSEY, STATE OF NEW MEXICO, STATE OF NORTH CAROLINA, STATE OF OKLAHOMA, STATE OF RHODE ISLAND, STATE OF TENNESSEE, STATE OF TEXAS, COMMONWEALTH OF VIRGINIA, STATE OF WASHINGTON, *ex rel.* LENA STURGEON, ANTHONY FERRANTE ANTHONY SCIOLE AND NATHAN NILES, <br><br> Plaintiffs, <br><br> v. <br><br> PHARMERICA CORPORATION, <br><br> Defendant. | Civil Action No. 15-6829-CMR |

**STIPULATION REGARDING THE
COLLECTION AND PRODUCTION OF
<u>DOCUMENTS AND ELECTRONICALLY STORED INFORMATION</u>**

This Stipulation sets forth the agreement between Lena Sturgeon, Anthony Ferrante, Anthony Sciole, and Nathan Niles (collectively "Plaintiffs"), and PharMerica Corporation ("Defendant") (each individually, a "Party" and collectively, the "Parties") regarding the

1

production of paper documents ("Documents") and electronically stored information, as defined below, in the above-captioned case (the "Action").

## I. GENERAL TERMS

A. <u>Application</u>. The procedures set forth in this Stipulation shall govern the production of Documents and ESI (as those terms are used in the Federal Rules of Civil Procedure, including Rule 34(a)) relevant to this Action. To the extent that relevant ESI includes text messages, instant messages, and personal e-mail accounts not supported by the Parties, the Parties will make reasonable efforts to collect and produce this information (subject to relevant general and specific objections), provided the individual and/or corporate custodian has control over this data and it is available in a format that is accessible by the Parties. In the event that any Party identifies a particular source of responsive Documents or ESI for which application of this Stipulation would be impossible or otherwise unduly burdensome or impractical, the Party identifying the source will promptly notify other Parties, and the Parties may meet and confer concerning the source.

B. <u>Scope of Discovery</u>. This Stipulation does not affect the proper subject matter of discovery in this Action. Nor does this Stipulation imply that Documents or ESI produced under its terms are relevant or admissible in this Action or in any other litigation.

C. <u>Preservation of Data</u>. This Stipulation does not alter or expand the preservation obligations of any Party. Each Party shall take all reasonable necessary steps to preserve and retain all documents and ESI that are potentially relevant to the claims or defenses of any party. Each party shall take all reasonable steps to prevent the automatic, intentional or accidental destruction of documents and ESI, including attorney-client privileged communications. The materials to be preserved and not destroyed include, without limitation, writings, drawings,

2

graphs, charts, photographs, sound recordings, images, and other data compilations stored in any medium (*e.g.*, hard copy files or electronically) from which information can be obtained. ESI information may be contained on desktop computers, network servers, laptops, CDs/DVDs/flash drives, personal data assistants, cell phones, handheld devices, online, in databases, and/or in instant messages.

  D. Privileges. Nothing in this Stipulation shall be interpreted to require the disclosure of Documents or ESI that a Party contends are protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or protection.

  E. Legibility. The Parties will make reasonable efforts to ensure that all Documents and ESI they produce are legible. If a copy is not legible and it is possible to produce a legible copy, such a legible copy will be produced (subject to relevant general and specific objections) within five (5) business days of a request from a receiving Party, or as mutually agreed upon by the Parties. But if no legible copy can be made, then the original will be made available for inspection and copying within ten (10) business days of a request from a receiving Party, or as mutually agreed upon by the Parties.

  F. Modification and Amendment. This Stipulation may be modified or amended by written agreement of the Parties.

  G. Reservation of Rights. The Parties reserve all rights under the Federal Rules of Civil Procedure, the Local Rules of Practice of the U.S. District Court for the Eastern District of Pennsylvania.

  H. Definitions.

    1. "Electronically stored information" or "ESI", as used herein, has the same meaning as in Federal Rules of Civil Procedure 26 and 34.

3

2. "Metadata" means (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and/or (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

3. "Native File(s)" means ESI in the electronic format of the application in which such ESI is normally created, viewed, and/or modified.

## II. COLLECTION OF DOCUMENTS AND ESI

A. <u>Custodians</u>.

Within 30 days of receipt of a written discovery request from another Party or from Entry of an Order consistent with this Stipulation, the responding Party shall identify a reasonable subset of ESI custodians that are likely to have ESI responsive to those written discovery requests. Prior to the production of ESI, each Party shall provide to all other Parties a list of ESI custodians from whom ESI will be collected and a good-faith explanation describing how the reasonable subset of ESI custodians was determined.

B. <u>Sources</u>.

The Parties shall make reasonable efforts to search for and identify, for each custodian, all locations where potentially relevant hard copy files or ESI reside. Those locations can include, but are not limited to:

1. All desks and desk drawers, file cabinets, storage boxes, and file rooms, where hard copy files reside or may have resided during the relevant time period.

2. All storage locations used by the Parties, including personal residences and vehicles.

3. All desktop and laptop computers, tablets, email servers, file servers, network drives, and shared drives, cell phones and other hand-held devices where ESI resides.

4. All Company-owned databases, web-based email accounts and Cloud repositories where ESI resides.

C. Search of ESI.

If the responding Party intends to use an electronic search to locate responsive ESI after its collection, the Party shall notify all other Parties and propose search terms and any restrictions as to scope and method. The Parties shall confer in good faith in an attempt to reach an agreement as to the method of searching, and the words, terms, and phrases to be searched.

The Parties shall also attempt to reach an agreement as to the timing and conditions of any additional searches that may become necessary in the normal course of discovery. The responding Party shall provide a list of the key terms, words and phrases and the number of hits per term, word or phrase 30 days prior to the first ESI deadline. If the Parties disagree on the applicable keywords to be used, any Party may file an appropriate motion for determination by the Court. During the pendency of any such motion, the producing Party's production obligations will not be stayed.

D. Collection of ESI. The Parties shall use best efforts to collect ESI in a forensically sound manner that does not alter metadata or other file attributes.

### III. PRODUCTION OF HARD COPY DOCUMENTS

A. File Type. The Parties shall produce Documents as Group IV black and white, single-page TIFF images at not less than 300 dpi resolution. In addition to the single page TIFF images and extracted text files, the parties agree to provide load files (.OPT file and .LFP file) linking the TIFFs with their associated text file such that the documents shall be loadable into

document management software such as Concordance (.DAT, LFP, and OPT), and indicate appropriate document and family breaks, as well as metadata load files in delimited text format containing the fields required by Section IV(B). The TIFF image must convey the same information as if the Document were produced in paper.

B. OCR. For documents that do not contain redactions, the producing Party will produce an Optical Character Recognition ("OCR") text file for (i) each imaged paper document, and (ii) each electronic document for which text cannot be extracted. For documents that contain redactions, the producing Party will provide an OCR text file for the unredacted portions of such documents. Said OCR files shall be produced as document level text files and be named consistently with their corresponding TIFF files (e.g., [producing Party's Name]-000000001.tif and [producing Party's Name]-000000001.txt). The Parties shall confer to identify the list of file types for which text cannot be extracted, and for which OCR text will thus be provided by the producing Party at the time of production pursuant to this paragraph. The Parties recognize that agreeing to a specific list now is premature as the Parties first need to understand which file types might be relevant.

C. Color Copies. A receiving Party may request that specific Documents be produced in color for good cause. The Parties then shall meet and confer to discuss production of color image(s) for specific Documents, or groups of Documents. With respect to Documents or groups of Documents that are in color but are not produced in native format, a Producing Party shall exercise good faith with respect to whether or not it should produce such Documents or groups of Documents in color or provide the receiving Party notice that such Documents are in color.

6

D.  <u>Family Groups</u>. The Parties shall maintain family groups together in one production volume and shall not break family groups apart in separate production volumes.

E.  <u>Scan Size</u>. Reasonable efforts will be used to scan Documents at or near their original size, so that the print or image on the Document appears straight, and not skewed. Reducing image size may be necessary to display production numbers and confidentiality designations without obscuring text. Physically oversized originals will appear reduced. A producing Party reserves the right to determine whether to produce oversized Documents in their original size. A receiving Party may request that specific oversized Documents be produced in their original size for good cause. The Parties then shall meet and confer to discuss production of specific documents in their original size.

F.  <u>Notes and Attachments</u>. If any original Document has notes or attachments affixed thereto, the Parties will produce copies of those Documents with the accompanying notes and attachments unless privileged or exceptioned during processing.

## IV. PRODUCTION OF ESI

A.  <u>File Type</u>. Except as specified in Section IV(C) below, the Parties shall produce ESI as Group IV black and white, single-page TIFF images at not less than 300 dpi resolution. The parties also agree to deliver extracted text corresponding to each imaged document. In addition to the single page TIFF images and extracted text files, the parties agree to provide load files (.OPT file and .LFP file) linking the TIFFs with their associated text file such that the documents shall be loadable into document management software such as Concordance (.DAT, LFP, and OPT), and indicate appropriate document and family breaks, as well as metadata load files in delimited text format containing the fields required by Section IV(B). The TIFF image must convey the same information as if the Document were produced in paper.

7

B. <u>Metadata</u>. For each item of ESI, if applicable, the Parties shall identify the following metadata:

>author/from
>recipient/to
>persons to whom the ESI was copied/CC
>persons to whom the ESI was blind copied/BCC
>the native application date on which the ESI was created
>the date the ESI was last modified
>the subject line
>the file name
>the file extension (*e.g.*, pdf, doc, ppt, etc.)
>date sent
>date received
>beginning bates
>ending bates
>beg attach
>end attach
>page count
>MD5/SHA value
>All Custodians
>Filepath
>NativeFileLink

The Parties will take reasonable steps to preserve, to the extent they have a value, all Metadata associated with ESI even if such Metadata is not specified above for production. The Parties are not obligated to populate manually any of these fields if such fields cannot be extracted from the ESI. Nothing in this paragraph shall be construed to obligate a party to (i) create new Metadata that is not already in existence at the time of collection of the ESI, (ii) produce Metadata that implicates the attorney-client privilege or attorney work product, or (iii) produce Metadata that is protected from disclosure by statute or regulation. The Parties further agree that a Producing Party will not challenge the authenticity or accuracy of metadata it produces absent good cause.

C. <u>Historical Metadata</u>. A receiving Party may request that historical metadata (e.g., the dates ESI was edited, persons who edits the ESI, persons who viewed the ESI) of specific Documents be produced for good cause. The Parties then shall meet and confer to

8

discuss production of historical metadata for specific Documents, or groups of Documents. With respect to Documents or groups of Documents, a Producing Party shall exercise good faith with respect to whether or not it should produce the historical metadata of such Documents or groups of Documents. The Producing Party shall provide the receiving Party notice that such historical metadata does not exist, if applicable.

D. Native Files.

1. Microsoft PowerPoint Files shall be produced as Native Files. To the extent that a PowerPoint contains information subject in part to a claim of privilege or other protection from disclosure, it shall be produced in the form of a redacted .TIFF or .TIF image, rather than in native format.

2. MS-Excel and Database Files. Except as otherwise provided herein, MS-Excel files, .CSV files and similar spreadsheet files and databases shall be produced in native format along with a bates-numbered single-page .TIFF or .TIF image stamped "Produced in Native Format" along with the corresponding Bates number and confidentiality designation. The metadata load file for each such document or database shall contain the document designation (i.e. "Confidential" in a field named "Designation"), and a link to the native format document or database named "Native Link." Such links should contain the full directory path and file name of the MS-Excel spreadsheet or database as contained in the production media. To the extent that a document or database contains information subject in part to a claim of privilege or other protection from disclosure, it shall be produced in the form of a redacted .TIFF or .TIF image, rather than in native format.

3. MS-Access Files. Except as otherwise provided herein, production of responsive data contained in MS-Access database files will be in native format along with a

9

bates-numbered single-page .TIFF or .TIF image stamped "Produced in Native Format." To the extent that any such material contains information subject in part to a claim of privilege or other protection from disclosure, it shall be produced in native format with redactions of allegedly privileged material. The parties agree to meet and confer, to the extent necessary, as to a reasonable production format for any types of relational databases other than MS-Access.

    4.    Non-Convertible Files. Common system and program files as defined by the NIST library (which is commonly used by e-discovery vendors to exclude system and program files from document review and production) need not be processed, reviewed or produced. Examples of file types that are not conducive to conversion into .TIFF or .TIF format include but are not limited to: *.exp *. ilk *.res *.trg *.tlh *.idb *.pdb *.pch *.opt *.lib *.cab *.mov *.mp3 *.swf *.psp *.chi *.chn *.com. *.dll *.exe *.hlp *.ivi *.ivt *.ix *.msi *.nls *.obj *.ocx *.rmi *.sys *.tmp *.ttf *.vbx *.wav *.wpg *.iso *.pdb *.eps *.mpeg *.mpg *.ram *.rm *.psd *.ai *.aif *.bin *.bqx *. snd *.mpe *.wnw *.wma *.xfd *.db *.bat *.xnk *.qtl *. kob *.mso *. dat *.m4a *.bak *.xll *.blank *.wdf *.cdo *.snp *.rename *.mdi *.sda *.ren *.001 *.crf *.dtf *.eds *.exl *.dwg *.fdf *.pcl *.wmf *.wps *. fpage *.odttf *.cas *.ldl *.wm *.m4p *.dex *.3g2 *.sss *.xyz. The parties agree to meet and confer regarding a reasonable format for production of any such files to the extent necessary.

    E.    <u>Voice Mail</u>. The Parties agree that voice mail need not be produced unless it is maintained and stored in a digital, searchable format and is under the control of the Parties. If the parties are aware of responsive voice mail which is under the control of the Parties which is not stored in a digital, searchable format, the parties shall meet and confer with respect to its production.

10

F. <u>Color</u>. A receiving Party may request that specific ESI be produced in color for good cause. The Parties then shall meet and confer to discuss production of color image(s) for specific ESI. With respect to ESI that is in color but are not produced in native format, a Producing Party shall exercise good faith with respect to whether it should produce such ESI in color or provide the receiving Party notice that such ESI is in color.

G. <u>De-duplication</u>. A party is only required to produce a single copy of a responsive document and shall deduplicate responsive ESI (based on MD5 or SHA-1 hash values at the document level) across custodians. However, hard copy documents shall not be eliminated as duplicates of responsive ESI. In addition, if deduplication is performed, the identity of the other custodians of deduplicated items must be listed in the "All Custodians" metadata field of the copy of the single record that is produced.

H. <u>Attachments</u>. If any original ESI has attachments, the Parties will produce copies of that ESI with the attachments unless privileged, not responsive to a discovery request, or exceptioned during processing.

I. <u>Preservation of Native Files</u>. When ESI is produced, the producing Party will maintain a separate file as a Native File and, in that separate file, it will not modify the Native File in a manner that materially changes the File and the Metadata.

J. <u>Encryption</u>. The producing Party shall encrypt all Production Data. Such encryption should only be implemented in a manner that would not preclude the reasonable use of ESI. The producing Party shall transmit the encryption key or password to the requesting Party, under separate cover, contemporaneously with sending the encrypted media.

K. <u>Chain of Custody</u>. Producing Party shall ship encrypted media and/or data via FedEx or UPS and provide tracking numbers for all shipments to ensure proper chain of custody.

L. <u>Preservation Not Required for Not Reasonably Accessible ESI</u>. The Parties agree that the Parties need not preserve, search for, or produce (a) deleted computer files, whether fragmented or whole, (b) temporary or cache files, including internet history, web browser cache and cookie files, and (c) server, system, or network logs.

M. <u>Email Threads</u>. The parties agree that email threads need to be produced only at the most inclusive level(s) provided that no information regarding the time and date each email was sent, the subject of each email, or the parties sending, receiving, copied on, or blind copied on each email is omitted from or lost at the most inclusive level. All threads branching from a particular email must be produced at the most inclusive level such that all exchanges or conversations in the chain are produced.

N. <u>Sample</u>. At least five business days before the first deadline for the production of ESI, the producing Party shall produce to the receiving Party a sample production of ESI to assist the receiving party's ESI vendor in resolving any formatting or load file issues before the full production is received.

## V. BATES LABELING/CONFIDENTIALITY DESIGNATIONS

A. <u>Labeling</u>. Each page of all images produced (whether Documents or ESI) must be clearly labeled with an indelible, legible, unique Bates number identifier electronically "burned" onto the image. Reasonable steps shall be taken to place the Bates number at a location that does not obscure any information from the source document. In addition, to the extent any image or file is to be marked confidential, each page of the image or file to be marked confidential shall include the appropriate confidentiality designation as determined in the Protective Order separately entered into by the Parties. There shall be no other legend or stamp

placed on the document image, with the exception of redacted information due to claims of applicable privileges.

B. <u>Consecutive Numbering</u>. The Parties agree that a convention on Bates number ordering will help the Parties better organize production of Documents and ESI in this Action. Therefore, to the extent possible, Documents and ESI shall be Bates-numbered consecutively by custodian (source), maintaining all parent-child relationships. Document numbers for documents produced by the Parties shall identify the Party's name and shall be in the format "Party Name-00000001."

C. <u>File Names</u>. Image file names must be unique and must correspond with the Bates number imprinted on the image. For example, if the Bates number "B0000001" was imprinted, the image would bear the name "B0000001.tif."

D. <u>Authenticity</u>. No Party shall object that Documents or ESI produced pursuant to this Stipulation is not authentic based upon the file naming convention described in Section V(C), above. The Parties otherwise reserve all rights regarding their ability to object to the authenticity of Documents or ESI. The Parties further agree that a Producing Party will not challenge the authenticity or accuracy of metadata it produces absent good cause.

E. <u>Native Files</u>. If Native Files are produced, the Party producing such Native File shall include a single-image placeholder TIFF with a single Bates number on the image itself. As stated above, the slipsheet for each native Excel file will include the text "File Produced In Native Format" along with the corresponding Bates number and confidentiality designation. The Native File shall be renamed to match the Bates number assigned thereto. There shall be no Bates numbering of Native Files at the page level.

13

## VI. PRIVILEGE AND REDACTIONS

A. The Parties recognize that there may be a limited number of instances where there are categories or groups of Documents or ESI in which all items are privileged and that, because of the large number of individual items in such a category or group, it might be an unnecessary burden to separately identify on a privilege log each individual Document or item of ESI included in that group. To the extent a Producing Party believes such an instance exists, instead of separately identifying each Document or item of ESI on its privilege log, the Producing Party may instead initially identify categories or groups of privileged Documents or privileged ESI. In so doing, the Producing Party shall describe in its privilege log the category or group of privileged Documents or ESI (including, without limitation, the criteria and method of delimiting the category or group), the factual basis for a reasonable belief that all Documents or ESI in the category or group are privileged, the reasons why it would be an unnecessary, great burden to separately identify on a privilege log each individual Document or item of ESI included in that group, and the legal basis for the assertion of a privilege as to all Documents or ESI in the category or group. Additionally, if a Receiving Party requests further information relating to a category or group identified on Producing Party's privilege log, such information shall be provided so that the requesting Party has sufficient information to determine whether or not to challenge the privilege claim. The ultimate adjudication of challenged privilege claims shall be made on the basis of a document-by-document review.

B. <u>Redactions</u>. If the producing Party is redacting information from a page, the producing Party shall electronically "burn" the word "Redacted" onto the page at or reasonably near to the location of the redaction(s). If the producing Party redacts a document, the following

metadata fields must nonetheless be produced to the extent the fields are already populated in the ordinary course:

| Field Name | Description |
|---|---|
| ProdBeg | Beginning bates number |
| ProdEnd | Ending bates number |
| ProdBegAttach | Beginning attachment number |
| ProdEndAttach | Ending attachment number |
| FileExt | Efile field - DocType (the file name suffix of an electronic file) |
| Sent Date | Email field – Sent Date |
| Last Modified Data | Efile Field – Modification Date |
| Create Date | Efile field – Creation Date |
| Custodian (s) | Global deduplication was performed so multiple custodians will be supplied in this field. |

C. <u>Native Files</u>. Recognizing that Native Files cannot be redacted, producing Parties shall undertake reasonable efforts to produce documents in redacted form consistent with the principles contained in this Stipulation.

D. <u>Clawback</u>. The disclosure to another Party of any document which is subject to a legitimate claim that the document should have been withheld from disclosure as a privileged attorney/client communication or attorney work product shall not constitute a waiver of any privilege or otherwise affect the right to withhold it from production as privileged or work product. If a request is made to return any such allegedly privileged or work product document, the Party that received the document shall delete it and return all hard copies of it within 10 days of the request. The privilege or work product status of such document or information, if any, shall be deemed to be restored upon the making of such request, provided, however: (1) nothing herein shall preclude the non-producing party from promptly requesting the Court to determine whether the document or information is privileged or work product. In the event the non-producing party challenges the claim of privilege or work product within 15 days of the

15

producing party's notice of clawback, the non-producing party may retain a copy of such document for such purposes; (2) if the producing party either (i) expresses the intent to use such document or information at a hearing, deposition, or trial, or (ii) uses such document or information at a hearing, deposition, or trial, the producing party's right to request a return of such document or information shall be foreclosed. This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d).

**STIPULATED AND AGREED,**

/s/ *Catherine Pratsinakis*
Catherine Pratsinakis I.D. No. 88086
Cpratsinakis@dilworthlaw.com
**DILWORTH PAXSON LLP**
1500 Market Street, Suite 3500 E
Philadelphia, PA 19102
Phone: (215) 575-7000
Fax: (215)575-7200
*Counsel for Plaintiffs*

/s/ *Carolyn P. Short*
Carolyn P. Short, Esq., I.D. No. 38199
Carolyn.Short@hklaw.com
**HOLLAND & KNIGHT LLP**
2929 Arch Street, Suite 800
Philadelphia, PA 19104
Phone: (215) 252-9600
Fax: (215) 867-6070
*Counsel for Defendant*

Dated: November 8, 2019

**IT IS SO ORDERED.**

Dated: 11-12-19

Hon. Cynthia Rufe, United States Judge

16

# EXHIBIT C